■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DWIGHT ASHE, Appellant. [901 NYS2d 843]—

Judgment, Supreme Court, New York County (Charles H. Solomon, J.), rendered January 26, 2007, convicting defendant, upon his plea of guilty, of grand larceny in the first degree, and sentencing him to a term of 2¹/₃ to 7 years, reversed, on the law, the plea vacated, the superior court information dismissed, and the matter remanded to Supreme Court for further proceedings on the felony complaint.

The initial felony complaint charged defendant with grand larceny in the second degree. After it came to light that the total amount defendant embezzled from his employer exceeded $1 million, defendant agreed to waive prosecution by indictment and plead guilty to one count of grand larceny in the first degree. Defendant wrongly contends that the superior court information was jurisdictionally defective because it charged a crime of a higher degree than any of the crimes charged in the felony complaint (*see People v Pierce*, 14 NY3d 564 [2010]). However, because the only offense contained in the superior court information was not an offense for which defendant was held for grand jury action, the superior court information was jurisdictionally defective (*see People v Zanghi*, 79

NY2d 815 [1991]). *Zanghi* is indistinguishable from the present situation, and we have considered and rejected the People's arguments to the contrary. Concur—Gonzalez, P.J., Saxe, Manzanet-Daniels and Román, JJ.

McGuire, J., concurs in a separate memorandum as follows: The record establishes, and defendant does not dispute, that after being aided by counsel at every step, from his arraignment to his guilty plea, he knowingly and intelligently waived his right to be prosecuted by indictment. The record also establishes, and defendant does not dispute, that he then knowingly and voluntarily both agreed to be prosecuted by a superior court information and pleaded guilty to the class B felony of first-degree grand larceny, for having stolen more than $1 million dollars. He freely admitted his guilt and agreed to the imposition of a state prison sentence. And a plea of guilty, of course, "generally marks the end of a criminal case, not a gateway to further litigation" (*People v Hansen*, 95 NY2d 227, 230 [2000]).

Nonetheless, defendant now argues, years later, when the People's ability to prosecute him for this serious felony may be compromised and even though he got exactly what he bargained for, that his conviction must be vacated. He makes no claim of innocence or that for some reason he did not know what he was doing. Rather, he relies on the purest of technicalities in arguing that he should not have been permitted to agree to be prosecuted by and plead guilty to a superior court information charging him with the precise crime he committed, first-degree grand larceny. More specifically, he maintains that under the second sentence of CPL 195.20, as construed by the Court of Appeals in *People v Zanghi* (79 NY2d 815 [1991]), the information was jurisdictionally defective.

We all agree that *People v Zanghi* requires us to reverse defendant's conviction. I write separately for two reasons. First, I think it appropriate to discuss defendant's argument that the information is defective under *People v Zanghi* because the only offense contained in the superior court information was greater than any charged in the felony complaint. The majority correctly rejects this argument, as it does not matter that the sole offense charged in the information is greater than any charged in the felony complaint; what matters is that the sole offense charged in the information is not charged in the felony complaint and is not a lesser included offense of any offense charged in the felony complaint. Indeed, after oral argument of this appeal, the Court of Appeals, rejected this very argument (*People v Pierce*, 14 NY3d 564 [2010]). Second, I respectfully submit that the Court of Appeals should

reconsider its decision in *People v Zanghi*. The second sentence of CPL 195.20 does not require that it be construed to prohibit the parties under all circumstances from agreeing to a superior court information charging only a crime that is neither charged in the felony complaint nor a lesser included offense of such a crime. Construing the statute to contain that prohibition, moreover, serves no purpose as the prohibition neither protects a defendant from any evil nor vindicates any public policy consideration.

## I

On November 22, 2006, defendant executed in open court a written waiver of his constitutional right to be prosecuted by indictment and consented to be prosecuted instead by a superior court information charging him with first-degree grand larceny, which requires that the value of the property stolen exceed $1 million (Penal Law § 155.42). More than three months earlier, defendant had been arrested and charged in a felony complaint with second-degree grand larceny, which requires that the value of the property stolen exceed $50,000 (Penal Law § 155.40 [1]), and second-degree criminal possession of a forged instrument (Penal Law § 170.25). The felony complaint charged that defendant was the head of accounts payable at Nina Footwear and had stolen approximately $700,000 from the company by issuing forged checks to himself and a codefendant. Notably, the felony complaint also alleged that defendant had admitted to the police that he had issued the checks in question and forged the signatures. Thereafter, as the minutes of the several proceedings in criminal court prior to November 22 establish, defense counsel and the prosecutor were negotiating a disposition.

At the outset of the proceedings on November 22, defense counsel made clear that defendant had not wanted and did not want to be indicted by a grand jury. The court noted that a superior court information had been prepared and that the People would proceed to a grand jury if a disposition was not reached. Defense counsel then stated, "We did not want to be indicted in . . . this matter."

After the court stated that the felony complaint charged defendant with stealing hundreds of thousands of dollars from Nina Footwear, the prosecutor stated that "since the complaint was drafted, there has been a significant amount discovered on top of that. It is now over 1 million dollars." The court then outlined on the record the disposition to which the parties had agreed: defendant would plead guilty to a superior court infor-

mation charging him with first-degree grand larceny in exchange for a prison sentence of $2^{1/3}$ to 7 years, pay some $100,000 in restitution and consent to the entry of judgment against him in the full amount of the theft, about $1.5 million.

The considered, knowing and voluntary character of all that transpired thereafter is clear and not disputed. Following discussions between the court and counsel, defendant signed a waiver of indictment form. As required by CPL 195.20, the written waiver of indictment contained a statement by defendant that he was aware that he had the right under the New York State Constitution to be prosecuted by a grand jury indictment, was waiving that right and consenting to be prosecuted by a superior court information, and that the information would be charging the offense specified in the written waiver and have the same force and effect as an indictment filed by the grand jury. Also as required by CPL 195.20, the written waiver was signed by defendant in open court in the presence of his attorney, and the consent of the District Attorney was endorsed thereon.

In response to questions from the court, defendant said he understood both the waiver form and that there would not be an indictment, "consented to be prosecuted by a piece of paper called a superior court information," and wished to plead guilty to first-degree grand larceny, "the one and only count in the [s]uperior [c]ourt [i]nformation." Defendant then admitted that, over a two-year period from 2004 to 2006, he had stolen more than $1 million from Nina Footwear. He agreed both to the negotiated prison term of $2^{1/3}$ to 7 years and to forfeiture of more than $100,000. In addition, he signed a confession of judgment for approximately $1.5 million. During the plea allocution, when the court asked whether any other promises had been made, defendant responded, "I just want it to be over with." He then confirmed that he both was pleading guilty voluntarily and in fact was guilty. At sentencing, on January 26, 2007, the court noted that defendant had pleaded guilty under a superior court information and that "[e]verything was agreed to ahead of time."

## II

As defendant tacitly concedes, his waiver of the right to indictment does not violate anything in article I, § 6 of the New York State Constitution. In relevant part, that provision expressly states that "a person held for the action of a grand jury" upon a charge of a felony offense, "other than one punishable by death or life imprisonment, with the consent of the district attorney, may waive indictment by a grand jury and consent to be prose-

cuted on an information filed by the district attorney; such waiver shall be evidenced by written instrument signed by the defendant in open court in the presence of his or her counsel." Each of these constitutional conditions was satisfied here and defendant makes no claim to the contrary.

With respect to the nonconstitutional claims defendant does make, he misreads CPL 195.20 and contends that the superior court information was jurisdictionally defective "because it charged a higher level of offense than any charged in the felony complaint." As noted above, after oral argument of this appeal, the Court of Appeals rejected this contention (*People v Pierce*, 14 NY3d at 572 [inclusion in superior court information of offense of higher grade than any charged in felony complaint does not, "standing alone, . . . establish the invalidity of the [information] under *Zanghi*"]). The opinion in *Pierce*, however, principally focuses on another issue and the Court did not discuss at any length why it rejected the claim that a superior court information may not charge a higher level of offense than any charged in the felony complaint. Explaining why the claim is meritless helps explain why I believe the Court should reconsider *People v Zanghi*.

First of all, CPL 195.20 contains no prohibition on the inclusion in a superior court information of a count alleging a higher level offense than that or those charged in a felony complaint (or for which the defendant was held for the action of a grand jury). In relevant part, the statute reads as follows: "The offenses named [in a superior court information] may include any offense for which the defendant was held for action of a grand jury and *any* offense or offenses properly joinable therewith pursuant to sections 200.20 and 200.40" (CPL 195.20 [emphasis added]).[1] Under CPL 200.20, the section applicable here, the level of an offense is irrelevant to the question of whether it is properly joinable with another offense.

Accordingly, the prohibition defendant finds in the second

---

**1.** The phrase "held for action of a grand jury" is not defined in a formal sense in the Criminal Procedure Law. An order of a local criminal court holding a defendant for grand jury action, however, "presupposes that a felony complaint has been filed, [the] defendant has been arraigned on the complaint and, following a preliminary hearing (unless waived by [the] defendant), the local criminal court has found reasonable cause to believe [the] defendant committed a felony (*see*, CPL 180.10, 180.30, 180.70)" (*People v D'Amico*, 76 NY2d 877, 879 [1990]). I agree with the majority's implicit determination to reject the People's argument that first-degree grand larceny was one of the offenses for which defendant was held for action of the grand jury; whether a local criminal court could hold a defendant for action of a grand jury for an offense not charged in the felony complaint is an issue we need not address.

clause of this sentence is precluded by the plain language of the statute. As in *People v Menchetti* (76 NY2d 473 [1990]), the word "any" should be given its plain meaning. There, the Court of Appeals emphasized the same word in the first clause of this sentence in concluding that a superior court information could charge a lesser included offense of an offense for which a defendant was held for the action of a grand jury (*id.* at 477).[2] Defendant reads CPL 195.20 as if it stated that the offenses named in a superior court information "may include any offense for which the defendant was held for action of a grand jury and any offense or offenses properly joinable therewith pursuant to sections 200.20 and 200.40[, except that no such joinable offense may be a higher level of offense than the offense or offenses for which the defendant was held for action of a grand jury]." That reading of the statute, however, is impermissible (*see Matter of Chemical Specialties Mfrs. Assn. v Jorling*, 85 NY2d 382, 394 [1995]).

By contrast, another provision of the Criminal Procedure Law does expressly qualify the broad sweep of the authority conferred by CPL 195.20 to allege in a superior court information "*any* offense properly joinable" (emphasis added) with an offense for which the defendant was held for action of a grand jury. CPL 200.15, after employing the same language as CPL 195.20 to define the offenses that may be included in a superior court information, goes on to prohibit the inclusion of "an offense not named in the written waiver of indictment executed pursuant to section 195.20." The existence of this express prohibition is another reason to reject the unstated prohibition defendant discovers in CPL 195.20 (*Morales v County of Nassau*, 94 NY2d 218, 224 [1999]).

Giving the second sentence of CPL 195.20 its natural meaning accords with common sense. The usefulness and practicality of the flexibility it affords to both the prosecution and the defense is apparent. Suppose, for example, that after a defendant is held for the action of a grand jury on a felony complaint charging the class D felony of second-degree assault (Penal Law § 120.05), the victim dies from her injuries. Because the class B felony of first-degree manslaughter (Penal Law § 125.20) is properly joinable with the second-degree assault charge (CPL 200.20 [2] [b]), the defendant could waive his right to indict-

---

**2.** The Court also observed in *People v Menchetti* that "[t]he plain language of [article I, § 6] does not require that the information contain the precise charge for which the defendant was held even though the waiver of indictment is necessarily a waiver of indictment on that charge" (76 NY2d at 477 [internal quotation marks omitted]).

ment pursuant to an agreement to be prosecuted by a superior court information for the homicide offense. Another example would be a case in which the defendant was charged in a felony complaint with the class E felony of third-degree rape for engaging in sexual intercourse with another person less than 17 years old (Penal Law § 130.25 [2]). If further investigation after the filing of the felony complaint revealed that the defendant was guilty of first-degree rape (Penal Law § 130.35 [1]) for having committed the rape (or another rape of the victim during a different criminal transaction) by means of forcible compulsion, CPL 195.20 would permit the defendant to waive indictment and agree to be prosecuted by a superior court information for the class B felony of first-degree rape (CPL 200.20 [2] [a], [b]).

This case also illustrates the good sense of CPL 195.20. When defendant was arrested and arraigned on the felony complaint, the full extent of his theft was unknown. Unquestionably, and defendant does not dispute, the first-degree grand larceny offense is properly joinable with both of the crimes alleged in the felony complaint, second-degree grand larceny and second-degree criminal possession of a forged instrument, regardless of whether the first-degree grand larceny charge is based on the same criminal transaction as those lesser offenses (CPL 200.20 [2] [a], [b], [c]). Of course, and as is discussed below, a defendant can secure significant benefits by waiving indictment.

### III

Defendant is correct, however, that *People v Zanghi* requires reversal of his conviction. Zanghi was held for the action of a grand jury following his arraignment on a felony complaint charging criminal possession of stolen property in the *fourth* degree and the misdemeanor of unauthorized use of a motor vehicle in the third degree. He thereafter executed a written waiver of his right to indictment, consented to be prosecuted by a superior court information charging him solely with criminal possession of stolen property in the *third* degree and pleaded guilty to that crime. The Court of Appeals agreed with Zanghi's claim that the superior court information was jurisdictionally defective.

The Court explained its holding as follows: "The language of CPL 195.20 makes clear that where 'joinable' offenses are included, the information must, at a minimum, also include at least one offense that was contained in the felony complaint ('offenses named [in the information] may include any offense for which the defendant was held . . . *and* any offense or offenses properly joinable *therewith*' [emphasis supplied]). Since the

information here did not meet that criterion, it is unnecessary for us to decide in this case whether CPL 195.20's provision for including joinable offenses along with the offense for which the defendant was held is consistent with the constitutional provisions for waiver of indictment" (*People v Zanghi*, 79 NY2d at 818).

As is evident, the Court held that the information was jurisdictionally defective because it did not meet what the Court believed to be a requirement of the statute, the requirement that it, "at a minimum, also include at least one offense that was contained in the felony complaint."[3] The Court expressly predicated its holding on the failure of the information to "meet that criterion" (*id.*), not on the ground that it charged an offense higher than any for which Zanghi was held for the action of a grand jury.

As also is evident, this case is indistinguishable from *People v Zanghi*. Because the superior court information charged only first-degree grand larceny, and that offense is not one for which defendant was held for the action of the grand jury, under *People v Zanghi* it is of no moment that first-degree grand larceny is properly joinable with both crimes charged in the felony complaint. The information is jurisdictionally defective nonetheless.

I respectfully submit that CPL 195.20 does not require a superior court information to charge at least one of the offenses charged in the felony complaint. In the first place, the sentence states that "[t]he offenses named *may* include *any* offense for which the defendant was held for action of a grand jury and *any* offense or offenses properly joinable therewith" (emphasis added). Giving the words "may" and "any" their ordinary meaning, the statute authorizes the information to include any of two categories of offenses—those for which the defendant was held for action of the grand jury and those properly joinable with the former category—without requiring the inclusion of an offense from both categories or only the former category. A lease might permit tenants of an apartment building "to have any dog less than 30 lbs and any other domesticated animal that weighs less," but nobody would think that a tenant who has a cat also must have a dog. *People v Zanghi*, however, reads the sentence as if it stated that "[t]he offenses named [*must*] include [*an*] offense for which the defendant was held for action

---

**3.** The Court's discussion of *People v Menchetti* (76 NY2d 473 [1990], *supra*) makes plain that this requirement is satisfied if the information charges only a lesser included offense of an offense charged in the felony complaint (*see People v Zanghi*, 79 NY2d at 817).

of a grand jury and [*may include*] any offense or offenses properly joinable therewith." The Legislature, of course, easily could have so stated if it intended that meaning (*Matter of Theroux v Reilly*, 1 NY3d 232, 240 [2003] ["If the Legislature had intended (a restriction), it easily could have and surely would have written the statute to say so. We may not create a limitation that the Legislature did not enact"]).

To be sure, as one court emphasized in construing the word "may" in this same sentence, there is authority that permits the word to be construed to mean "must" when "required by the context of the statute, by the facts surrounding the statute's enactment, or to effectuate the legislative intent" (*People v Herne*, 110 Misc 2d 152, 158 [Franklin County Ct 1981]). There is no good reason, however, to give an unnatural reading to the word "may" in the present context. The two words in the sentence emphasized by the Court in *People v Zanghi*, "and" and "therewith," do not provide such a reason. As noted, particularly given that the opening clause states that the information "may" include any offense for which the defendant was held for the grand jury, it is not at all unreasonable to construe the clause that follows the word "and" to state a separate category of offenses that the information also may include.[4]

The Court did not explain in *People v Zanghi* why it believed the word "therewith" supported its holding that an offense joinable with an offense for which the defendant was held for action of a grand jury may be charged in a superior court information only if the latter offense also is charged. If the Court believed, however, that the word refers back to the superior court information, suffice it to say that another reading of the sentence is reasonable. After all, the nearest antecedent to the word "therewith" (*see generally Matter of People v Applied Card Sys., Inc.*, 11 NY3d 105, 127 [2008, Read, J., dissenting] [discussing grammatical rule of the last antecedent], *cert denied sub nom. Cross Country Bank, Inc. v New York*, 555 US —, 129 S Ct 999 [2009]), is not an accusatory instrument but the phrase "any offense for which the defendant was held for action of a grand jury." In any event, the sentence does not unambiguously

---

4. Moreover, a principle of statutory construction permits the word "and" to be construed as "or," and vice versa, when doing so better effectuates legislative intent (*see People ex rel. Municipal Gas Co. of City of Albany v Rice*, 138 NY 151, 156 [1893] ["The words 'and' and 'or,' when used in a statute, are convertible as the sense may require. The substitution of the one for the other is frequently resorted to in the interpretation of statutes when the evident intention of the lawmakers requires it"]; *see also Matter of Long v Jerzewski*, 235 App Div 441, 442 [4th Dept 1932]).

require that when a joinable offense is charged in a superior court information, the information also must charge the offense charged in the felony complaint with which the former offense is joinable.

In *People v Herne*, the court believed that its interpretation of the second sentence of CPL 195.20, the same one later adopted by the Court of Appeals in *People v Zanghi*, was supported by the principle that "a statute should be construed so as to avoid doubts concerning its constitutionality" (110 Misc 2d at 158 [internal quotation marks omitted]). But construing the sentence to mandate that the information always include an offense for which the defendant was held for action of a grand jury raises, rather than avoids, a constitutional question, i.e., whether the statute impermissibly limits the right to waive indictment conferred by New York Constitution, article I, § 6.[5] The constitutional text contains no language suggesting that the right to waive indictment is contingent on the inclusion in the information of at least one of the offenses for which a defendant was held for the action of a grand jury. Rather, apart from prohibiting a waiver when a person is held for the action of a grand jury for an offense punishable by death or life imprisonment, the text requires only that the person have been "held for the action of a grand jury upon a charge for [an infamous crime]" (NY Const, art I, § 6). The absence of any such textual support for requiring an information to include at least one of the offenses for which the defendant was held for the action of a grand jury is important, albeit not necessarily decisive (*cf. People v Page*, 88 NY2d 1, 9 [1996] [construing constitutional provision and observing that "(t)he most compelling criterion in the interpretation of an instrument is, of course, the language itself" (internal quotation marks omitted)]).

Notably, when a person who has been held for the action of a grand jury is indicted, nothing in the Criminal Procedure Law requires that the indictment allege at least one of the offenses for which he or she was held for the grand jury's action. To the contrary, the relevant statute requires only that the indictment "must charge at least one crime" (CPL 200.20 [1]). Again, nothing in the constitutional text suggests that a defendant who waives indictment, but not a defendant who is indicted after be-

5. The court in *People v Herne* also believed its reading of the second sentence of CPL 195.20 to be supported by the principle that a "statute must not be given a construction which would make it an absurdity" (110 Misc 2d at 158). As is also discussed below, however, the construction adopted in *People v Herne* and *People v Zanghi* is the one that produces untenable consequences.

ing charged in a felony complaint, must be charged with at least one of the offenses for which he or she was held for the action of a grand jury.

A constitutional provision, moreover, "is to be construed . . . to give its provisions practical effect, so that it receives a fair and liberal construction, not only according to its letter, but also according to its spirit and the general purposes of its enactment" (*Ginsberg v Purcell*, 51 NY2d 272, 276 [1980] [internal quotation marks omitted]). As Governor Rockefeller stated in proposing the amendment to article I, § 6, "[t]his procedural advance . . . would undoubtedly speed disposition of serious cases and help to clear court calendars, without infringing upon a defendant's basic rights or the right of society to adequate protection" (1971 Public Papers of Nelson A. Rockefeller, at 1152 [internal quotation marks omitted]). In addition, Governor Rockefeller stated that a "substantial portion" of defendants who eventually plead guilty, "desiring to [expedite] the disposition of the charges against them, would favor waiving the requirement of a grand jury indictment" (*id.*). In light of these statements of the amendment's purposes, stingy construction of it would be needed to invalidate a statute permitting a superior court information to allege only an offense joinable with one for which the defendant was held for action of a grand jury.

Other substantive considerations support my reading of CPL 195.20. The clear import of *Zanghi*, as well as the plain language of CPL 195.20 (and CPL 200.15), is that the information would be impeccable rather than jurisdictionally defective if it also alleged either of the offenses charged in the felony complaint (second-degree grand larceny or second-degree criminal possession of a forged instrument). The additional and crucial point is that the Legislature could not have had any reason to differentiate between the information to which defendant and the People agreed, charging only first-degree grand larceny, and the information to which they could have agreed, charging that offense and an offense, second-degree grand larceny, they evidently regarded as irrelevant to the prosecution and disposition of the case. Nothing, no substantive right of the defendant or any public policy objective, would be served by insisting that the information also charge an offense that the parties regarded as irrelevant.[6]

Construing CPL 195.20 to require a superior court informa-

---

**6.** To the contrary, to the extent it results in fewer waivers, precluding a waiver of the right to indictment unless the superior court information alleges an offense for which the defendant was held for action of a grand jury is *counter* to public policy. The legislation implementing the constitutional right

tion to charge at least one offense for which the defendant was held for action of a grand jury entails a particularly odd if not quixotic consequence. If, as is clear, the information would have been valid had it also charged either of the offenses charged in the felony complaint, it follows that the information would be valid if that additional charge was second-degree grand larceny. (There is no textual support in CPL 195.20 for differentiating between the offenses for which the defendant was held for action of a grand jury). But that means the information is jurisdictionally defective because it failed to allege a legally irrelevant offense. After all, the second-degree offense is a lesser included offense of the first-degree offense (CPL 1.20 [37]), and the Criminal Procedure Law expressly permits a defendant to plead guilty to a lesser included offense. Thus, including a charge of second-degree grand larceny would add nothing, or at least nothing of substance, to the information.

In another case, moreover, the parties might agree after arraignment in local criminal court that although there is sufficient evidence to establish the defendant's guilt of an offense joinable with an offense charged in the felony complaint, the evidence is insufficient to support the charge or charges in the felony complaint. For example, if a felony complaint charged the class B felony of first-degree robbery (Penal Law § 160.15) and the prosecution later determined that it could prove only the class E felony of fourth-degree criminal possession of stolen property (Penal Law § 165.45), the defendant might be able to obtain a benefit by communicating to the prosecutor his willingness to waive indictment and plead guilty to the possession charge. It makes no sense to think the Legislature intended to preclude a defendant in those circumstances from waiving his or her right to indictment and agreeing to be prosecuted by a superior court information unless he or she also were willing to be accused of a baseless charge in the information. A defendant's right under the New York Constitution to waive his or her right to indictment is just that, a constitutional right (NY Const, art I, § 6). And it is not obvious how the exercise of that right

to waive indictment (L 1974, ch 467) was a Governor's program bill and, as Governor Wilson explained in the memorandum accompanying the bill, the "waiver of indictment procedure will permit . . . a defendant to obtain a speedier trial and will save time and expense expended in unnecessary grand jury proceedings. The waiver [procedure] should also reduce the backlog of cases . . . awaiting grand jury action" (Governor's Program Bill Mem at 3, Bill Jacket, L 1974, ch 467, at 12, 1974 NY Legis Ann, at 10; *see also* Governor's Approval Mem, Bill Jacket, L 1974, ch 467, at 13, 1974 McKinney's Session Laws of NY, at 2095). Of course, moreover, these statements of the purposes of the legislation are in accordance with Governor Rockefeller's statements about the purposes of the constitutional amendment.

lawfully could be conditioned on the defendant's willingness to have the information include a baseless or irrelevant charge (*cf. Kusper v Pontikes*, 414 US 51, 58-59 [1973] ["For even when pursuing a legitimate interest, a State may not choose means that unnecessarily restrict constitutionally protected liberty"]).

Moreover, a rule prohibiting waiver of the right to indictment unless the superior court information alleges at least one offense charged in the felony complaint can be circumvented by the parties. After all, if the parties agreed to a superior court information charging only an offense joinable with an offense charged in the felony complaint, they could agree to have the defendant rearrested and charged with that offense in a new felony complaint (*cf. People v D'Amico*, 76 NY2d 877 [1990], *supra*). Presumably, another alternative would be for the parties to agree to amend the felony complaint, with any supporting depositions that might be necessary, pursuant to CPL 100.45. But requiring that the defendant be arrested anew or that new proceedings be commenced in criminal court on new or amended felony complaints is pointless. A procedural rule devoid of substance invites evasions that underscore its insubstantiality.[7]

In sum, the text of CPL 195.20 does not compel the construction adopted in *People v Zanghi* and unreasonable consequences follow from that construction. Accordingly, the statute should be construed to permit the information to charge an offense joinable with an offense for which the defendant was held for action of a grand jury, regardless of whether the latter offense also is charged (*see e.g. Matter of Rouss*, 221 NY 81, 91 [1917, Cardozo, J.] ["Consequences cannot alter statutes, but may help to fix their meaning. Statutes must be so construed, if possible, that absurdity and mischief may be avoided"]; *People v Santi*, 3 NY3d 234, 242 [2004] ["courts normally accord statutes their plain meaning, but will not blindly apply the words of a statute

---

7. Because no substantive reason is apparent for construing CPL 195.20 to embrace this rule, it can act as a trap for the unwary. Prosecutors and defense attorneys who are unaware of the rule are less likely to discover it through research. Perhaps for that reason, this case is not an isolated phenomenon. In at least eight cases, the Appellate Division has reversed convictions under *People v Zanghi* (*People v Morson*, 67 AD3d 1026 [2d Dept 2009]; *People v Colon*, 39 AD3d 661 [2d Dept 2007]; *People v Edwards*, 39 AD3d 875 [2d Dept 2007]; *People v Goforth*, 36 AD3d 1202 [4th Dept 2007], *lv denied* 8 NY3d 946 [2007]; *People v Kohl*, 19 AD3d 1155 [4th Dept 2005]; *People v Colon*, 16 AD3d 433 [2005], *supra*; *People v Quarcini*, 4 AD3d 864 [4th Dept 2004]; *People v Lucas*, 200 AD2d 414 [1st Dept 1994]; *see also People v Johnson*, 187 AD2d 990 [4th Dept 1992] [defendant improperly sentenced as second violent felony offender because predicate conviction for second-degree robbery should have been vacated under *People v Zanghi*]).

to arrive at an unreasonable or absurd result" (internal quotation marks omitted)]; *see also Matisoff v Dobi*, 90 NY2d 127, 133 [1997] ["where a statute's language is capable of various constructions, the 'obvious spirit and intent' of a statute necessarily informs the meaning and import to be accorded that language"]).

Finally, the mandate of CPL 470.05 (1) is relevant here. The Legislature's command is that "[a]n appellate court must determine an appeal without regard to technical errors or defects which do not affect the substantial rights of the parties." Although this statute does not expressly direct courts how to construe provisions of the Criminal Procedure Law, its directive should be considered when a court is attempting to resolve an ambiguity in one of those provisions. As between two possible readings of a provision of the Criminal Procedure Law, surely an appellate court should not adopt the one turning on technicalities that do not affect the substantial rights of the parties. This case presents a conflict between two obligations of intermediate appellate courts, the duty to abide the decisions of the Court of Appeals and the duty to abide the mandates of the Legislature. While I think we should resolve the conflict by abiding the former obligation, I also think the mandate of CPL 470.05 (1) is sufficient to justify my invitation to the Court of Appeals, however presumptuous the invitation may be, to reconsider *People v Zanghi*.[8] But if I am wrong—if, that is, the Legislature reasonably might have intended to bar the parties from agreeing to a superior court information charging only an offense joinable with one for which the defendant was held for action of a grand jury and such a bar is consistent with the constitutional right to waive indictment—the Court's disagreement with my position should be adequate recompense for the presumption.

---

**8.** I recognize, of course, that the Court could conclude that adhering to *People v Zanghi* is appropriate on the basis of principles of stare decisis (*see e.g. People v Taylor*, 9 NY3d 129, 148-149 [2007]; *People v Bing*, 76 NY2d 331, 337-338 [1990]).